**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diane Y Ross, | No. CV-24-01848-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Claimant Diane R.'s[1] ("Claimant") appeal from the Commissioner of the Social Security Administration's ("SSA" or the "Commissioner") denial of Social Security benefits. (Doc. 10.) The appeal is fully briefed. (Docs. 10, 11, 13.)    sons set forth below, the Administrative Law Judge's ("ALJ") decision will be **affirmed**.

## I.    BACKGROUND

### A.    Factual Overview

Claimant was 49 years old on her alleged disability onset date of March 20, 2020. (Administrative Record ("AR") 30.) She has at least a high school education and reported past work as a nurse. (AR 26, 30.) Claimant filed her Social Security Disability Insurance (SSDI) benefits application on May 17, 2021. (AR 19.) The claim was initially denied on April 1, 2022, and again upon reconsideration on December 20, 2022. (*Id.*) An administrative hearing was held telephonically on June 13, 2023, and the ALJ denied

---

[1]    As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

1    Claimant's claim on August 2, 2023.  (AR 19, 31.)  Claimant submitted a request for review

2    to the Appeals Council on September 28, 2023, which was subsequently denied on June 6,

3    2024.  (AR 1.)

4        **B.    The SSA's Five-Step Evaluation Process**

5        To qualify for SSDI benefits, a claimant must show that she "is under a disability."

6    42 U.S.C. § 423(a)(1)(E).  To be "under a disability," the claimant must be unable to engage

7    in "substantial gainful activity" due to any medically determinable physical or mental

8    impairment.  *Id.* § 423(d)(1).  The impairment must be of such severity that the claimant

9    cannot do her previous work or any other substantial gainful work within the national

10    economy.  *Id*. § 423(d)(2).  The SSA has created a five-step sequential evaluation process

11    for determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1520(a)(1).  The

12    steps are followed in order, and each step is potentially dispositive.  *See id.*

13    § 404.1520(a)(4).

14        At Step One, the ALJ determines whether the claimant is engaging in "substantial

15    gainful activity."  *Id.* § 404.1520(a)(4)(i).  "Substantial gainful activity" is work activity

16    that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2)

17    "gainful," i.e., usually done "for pay or profit."  20 C.F.R. § 416.972(a)–(b).  If the claimant

18    is engaging in substantial gainful work activity, the ALJ will find the claimant is not

19    disabled. *Id.* § 404.1520(a)(4)(i).

20        At Step Two, the ALJ determines whether the claimant has "a severe medically

21    determinable physical or mental impairment" or severe "combination of impairments."  *Id.*

22    § 404.1520(a)(4)(ii).  To be "severe," the claimant's impairment must "significantly limit"

23    the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).

24    If the claimant does not have a severe impairment or combination of impairments, the ALJ

25    will find the claimant is not disabled.  *Id.* § 404.1520(a)(4)(ii).

26        At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or

27    equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  *Id.*

28    § 404.1520(a)(4)(iii).  If so, the ALJ will find the claimant is disabled, but if not, the ALJ

must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that the record established that although Claimant worked after the alleged disability onset date of March 20, 2020, this work activity did not rise to the level of substantial gainful activity. (AR 21.)

At Step Two, the ALJ determined that Claimant had severe impairments, including status post stroke, knee arthritis, left knee replacement, and obesity. (*Id.*) Additionally, and importantly, at this step the ALJ also assessed Claimant's medically determinable mental impairment of depression by analyzing the four "paragraph B" criteria and provided an RFC assessment reflecting "the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis." (AR 22–24.)

At Step Three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 CFR 404.  (AR 24.)  The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform light work as defined in 20 CFR 404.1567(b) except she can frequently balance, stoop, and crouch.  She can occasionally climb ramps and stairs, kneel, and crawl. She can never climb ladders, ropes or scaffolds.  She can occasionally be exposed to extreme temperatures, humidity, and wetness, and workplace hazards, such as unprotected heights and moving mechanical parts.

(AR 25.)  The ALJ did not include any mental restrictions in the RFC.  (*Id.*)

At Step Four, the ALJ found that Claimant was not capable of performing past relevant work as a nurse.  (AR 29.)  At Step Five, based on the RFC formulation and the testimony of the vocational expert ("VE") at the hearing, the ALJ found that there are jobs that exist in significant numbers in the national economy that claimant can perform considering her age, education, work experience, and RFC.  (AR 30–31.)  Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from the alleged onset date through August 2, 2023.  (AR 31.)

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).  Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).  The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion."  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving

conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).  Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").  Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely."  *Garrison*, 759 F.3d at 1010.  Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.   DISCUSSION

Claimant's sole issue on appeal is that the ALJ "failed to provide mental restrictions in the RFC to account for [Claimant's] mild mental limitations in all four broad functional areas."  (Doc. 10 at 1.)

An ALJ is required to evaluate the severity of a claimant's medically determinable mental health impairments and evaluate her functional limitations in four broad areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself.  20 C.F.R. § 404.1520a(c)(3).  These broad functional areas are known as "paragraph B criteria."  Further, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of the individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996).  Thus, an ALJ must "assess the nature and extent of [a claimant's] mental limitations and restrictions and whether they reduce [the claimant's] ability to do past work and other work."  *Woods v Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1545(c)) (citation modified).

Here, the ALJ evaluated the severity of Claimant's "mental impairment of

depression," found that she has a "mild limitation" in each of the paragraph B criteria, and concluded that her mental impairment was nonsevere. (AR 22–24.) He set forth this detailed analysis in Step Two of his decision. (*Id.*) Claimant does not argue that the ALJ erred in conducting this Step Two analysis. (*See generally* Doc. 10.)

Claimant does argue, however, that the ALJ failed to "include a discussion or analysis of how [Claimant's] nonsevere mental impairments were factored into the RFC determination." (*Id.* at 8.) She asserts that the ALJ only discussed Claimant's "mental health limitations and impairments at Step 2 . . . [and not] at Steps 3, 4, or 5," rendering the ALJ's decision unclear as to whether he "actually considered the mild limitations . . . found at step 2 when determining [Claimant's] RFC." (*Id.* at 8–9.) In assessing this argument, the ALJ's decision must be reviewed holistically to determine whether he conducted an RFC assessment of Claimant's mental impairment of depression. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating a reviewing court looks to "*all* the pages of the ALJ's decision" when determining whether he or she sufficiently explained his finding).

That careful review confirms the ALJ conducted an RFC assessment of Claimant's mild mental impairments—and specifically stated that he did so—albeit in the Step Two analysis. (AR 24.) Immediately after finding that Claimant's mental impairment of depression was nonsevere, the ALJ conducted the mental impairment RFC analysis. He explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. ***The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.***

(AR 24 (emphasis added).) The ALJ then reviewed the medical evidence and found that no mental limitations were warranted. (*Id.*) Claimant omits the final, italicized sentence

of the paragraph quoted above in both her Opening Brief, (Doc. 10 at 12), and her Reply Brief, (Doc. 13 at 2).  This omission is telling.  But her decision to disregard the ALJ's express statement that he conducted the RFC analysis, does not alter the fact that he did so, even if under the "Step Two" heading.

Indeed, in the paragraphs that followed, the ALJ evaluated the evidence and conducted the RFC analysis, discussing the opinions of Dr. Michael Rabara, Dr. Jonathan Zuess, M.D., and Dr. Sandip Sen, M.D., all of whom concluded that no mental impairment restrictions were warranted, and all of whom the ALJ found persuasive.  (AR 24).  The ALJ summarized Dr. Rabara's findings and restated his conclusion that "there were no limitations associated with the claimant's condition that were expected to last 12 continuous months from the date of the exam," which occurred on March 29, 2022 (more than a year before the ALJ's decision).  (*Id.* (citing AR 1259–60).)  The ALJ also summarized and cited Dr. Zuess's and Dr. Sens's findings, which confirmed that no RFC restrictions were warranted as a result of Claimant's mental impairment.  (AR 24 (citing AR 62 ("No MRFCs [mental residual functional capacities] are associated with this claim.") and AR 73 (same)).)

Notably, Claimant does not take issue with the ALJ's evaluation of the medical records.  (*See generally* Doc. 10.)  Under similar circumstances in *Woods*—where the ALJ did not include any mental limitations in the RFC despite finding mild limitations in Step Two, and the claimant did "not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning"—the Ninth Circuit affirmed.  *Woods*, 32 F.4th at 794; *see also Fortunato v. O'Malley*, 2024 WL 1179966, at *4 n.2 (E.D. Cal. 2024) (stating that in *Woods* "the Ninth Circuit held that the ALJ's decision was sufficiently supported, even though the ALJ neither accommodated the claimant's mild mental limitations in the RFC nor explained why accommodations were unnecessary" because the claimant did not explain why the ALJ's conclusions were incorrect).  For this reason alone, reversal is not warranted.

Additionally, contrary to Claimant's assertion, the ALJ incorporated the mental impairment RFC assessment into his overall RFC discussion by specifically referring to the Step Two analysis and incorporating it:

> As discussed above, while the claimant's alleged disabling limitations due to multiple impairments and symptoms (as alleged in the record from the sources such as the disability report, function report, and testimony) the record is more consistent with the finding that the claimant's ankle dysfunction, from a fall, weak vision in the left eye, and hearing loss, asthma, hypertension, gastroesophageal reflux disease (GERD), hyperlipidemia, pre-diabetes, allergies, hyponatremia, ***and depression*** are nonsevere. However, the undersigned ***considered these nonsevere impairments individually and in combination with the claimant's severe impairments in formulating the residual functional capacity***.

(AR 26 (emphasis added).)   To summarize, the ALJ conducted the requisite mental impairment RFC analysis at Step Two and then incorporated that analysis into his RFC discussion.   This is all that is required.  20 C.F.R. § 404.1545(c).

Nonetheless, claimant asserts that this was insufficient, relying on *Hutton v. Astrue*, 491 F. App'x 850 (9th Circ. 2012), an unpublished Ninth Circuit decision, and several district court decisions applying *Hutton*.  (Doc. 10 at 8–13; Doc. 12 at 4–6.)  Those cases do not support Claimant's position, however, because unlike the ALJ here, the ALJs in those cases did not consider mental limitations in formulating the RFC.  *Hutton*, 491 F.Appx. at 850 (reversing because although "the ALJ was . . . required to consider [the mental impairment] when he determined [the claimant's] RFC" he "failed to do so"); *Sylvester H. v. Kijakazi*, 2022 WL 4466717, *7 (C.D. Cal. 2022) (reversing because the ALJ's "opinion does not include *any* discussion or analysis of how plaintiff's nonsevere mental impairments were factored into the RFC determination" (emphasis added)); *Fortunato*, 2024 WL 1179966, at *4 ("there was no discussion of [the claimant's] mental impairments"); *Craig H. v. Kijakazi*, 2023 WL 4679342, at *12 (S.D. Cal. 2023) ("[T]he Court notes that the ALJ's written opinion does not articulate why, after finding that Plaintiff had mild mental limitations in three of four broad paragraph B criteria, he did not include any of those restrictions in the RFC.").

Moreover, several of Claimant's cited cases confirm that the ALJ did not err here, given his analysis of her impairments in the RFC. *See Denney v. Saul*, 2019 WL 4076717, at *7-8 (E.D. Cal. 2019) ("The ALJ did not err in addressing Plaintiff's mental impairments in great detail at [Step Two] and briefly at [Step Four]."); *Frary v. Comm'r*, 2021 WL 5401495, at *10-19 (E.D. Cal. 2021) (discussing in detail cases applying and distinguishing *Hutton*, and affirming because "[u]nlike *Hutton*, the ALJ completed a significant discussion of [the claimant's] mental impairments" at Step Two and addressed that evidence again "within the RFC determination"); *Victoria H. v. Comm'r*, 2024 WL 1232086, at *4 (D. Or. 2024) (explaining that the "adequacy of the ALJ's RFC turns on whether it is consistent with the medical evidence" and affirming where ALJ discussed the medical evidence and the claimant did "not identify any specific mental limitation the ALJ failed to account for").

Ultimately, Claimant's argument in this case is that the ALJ erred by setting forth his mental-impairment RFC analysis in his discussion at Step Two and only briefly incorporated it by reference when formulating the RFC. But reversing on this basis would put form over substance to an unwarranted degree and, based on the caselaw cited above, contravene the principle that while an ALJ must "discuss and evaluate the evidence that supports his . . . conclusion," he need not do so under any particular heading. *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001).

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 29th day of September, 2025.

Honorable Sharad H. Desai
United States District Judge

- 9 -